## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 24 2017, 5:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dwayne Christopher Ward, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 24, 2017 <br><br> Court of Appeals Case No. <br> 20A03-1610-CR-2471 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Teresa L. Cataldo, Judge <br><br> Trial Court Cause No. <br> 20D03-1509-FA-21 |

**Altice, Judge.**

## Case Summary

Following a jury trial, Dwayne C. Ward was convicted of class A felony child molesting, class C felony child molesting, and class D felony dissemination of matter harmful to minors. He received an aggregate sentence of forty-nine years in prison, with ten of those years suspended to probation. On appeal, Ward contends that evidence regarding his personal viewing of pornography was improperly admitted, the State presented insufficient evidence to sustain his convictions, and his sentence is inappropriate.

We affirm.

## Facts & Procedural History

For many years, Ward's wife, Denise, provided regular childcare in their home to A.B.'s son, B.H., and daughter, G.H.,[1] in Elkhart. A.B. and Denise became good friends over the years. In May 2013, A.B., B.H., and G.H. moved in with the Ward family for about four months. Although Ward had full-time employment, he worked an early shift at a factory and came home in the afternoon. Thus, he was generally home with Denise and the children before A.B. came home from work in the evening. A.B. entrusted Ward, as well as Denise, with taking care of the children while she was working.

G.H. turned eight years old while living at the Wards' house. During that summer, Ward took G.H. into his bedroom on a number of occasions and

---

[1] B.H. was born in August 2002 and G.H. was born in May 2005. Denise began caring for B.H. in 2003 while A.B. worked.

closed the door while they were inside. Ward showed her pornography on his laptop computer in the bedroom, as well as on the couch in the living room. G.H. testified that Ward would quickly exit out of the screen if someone came into the living room while they were watching.

[5] While in the bedroom, Ward would also lie next to G.H. on the bed and touch her vagina. He would insert his finger into her vagina and move his hand up and down for a period of time. On at least one occasion, Ward placed G.H.'s hand on his exposed penis, but she quickly moved her hand away. He also touched her from behind with his penis. Once, Ward placed a substance from his penis onto G.H.'s vagina. Ward instructed G.H. on each occasion to not tell anyone. B.H. observed Ward and G.H. enter the bedroom and close the door about once a week.

[6] When G.H. and her family moved out in August 2013, they moved to Michigan and G.H. had no further contact with the Wards. G.H. disclosed the abuse to her mother in February 2015, and A.B. immediately contacted the Elkhart Police Department. G.H., then age nine, became very upset and told her mother she "couldn't hold it in any longer." *Transcript, Vol*. 3 at 113.

[7] Ward was interviewed by Lieutenant James Anderson on February 27, 2015. Although Ward denied molesting G.H., he indicated that he had demons that were coming back to haunt him, including drinking and womanizing. Ward also admitted that he watched pornography on the Internet but stated that he did not have a stash of pornography at his house.

[8] On September 9, 2015, the State charged Ward with four counts: Count I, class A felony child molesting; Count II, class A felony child molesting; Count III, class C felony child molesting; and Count IV, class D felony dissemination of matter harmful to minors. Following a three-day jury trial in August 2016, the jury found Ward guilty on Counts I, III, and IV and not guilty on Count II.[2]

[9] The trial court sentenced Ward on September 29, 2016, to forty-five years on Count I, four years on Count III, and one and one-half years on Count IV. Ten years of the sentence on Count I were suspended to probation. The trial court ordered the sentence on Count III to be served consecutive to the sentence on Count I and Count IV's sentence to run concurrently with Count I. This resulted in an aggregate sentence of forty-nine years in prison, with ten of those years suspended to probation. Ward now appeals.

## Discussion & Decision

### 1. Admission of Evidence

[10] Over Ward's objection based on Ind. Evidence Rule 404(b), the trial court allowed Lt. Anderson to testify to Ward's statements regarding his prior viewing of pornography over the Internet. Ward argues that the trial court

---

[2] During closing argument, the State made clear to the jury that Count I was based on Ward's digital penetration of G.H.'s vagina, while Count II was based on penetration of G.H.'s anus by Ward's penis. The State's evidence with respect to anal penetration, as opposed to digital penetration, was very sparse.

abused its discretion by admitting this evidence because it had no probative value and only acted to inflame the jury.

[11]  We review evidentiary rulings for an abuse of discretion. *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). An abuse of discretion will be found where the trial court's ruling is clearly against the logic and effect of the facts and circumstances. *Id.* On issues of relevance and unfair prejudice, a trial court's discretion is wide. *Id.* As our Supreme Court emphasized in *Snow*, this discretion often allows the trial court to resolve determinations under Ind. Evidence Rules 401 and 403 either way. *Id.* at 177.

[12]  Evid. R. 404(b)(1) prohibits evidence of "a crime, wrong, or other act" of the defendant when used as character evidence to show that on a particular occasion he acted in accordance with that character. *Baker v. State*, 997 N.E.2d 67, 70 (Ind. Ct. App. 2013). Such evidence, however, may be admissible for other purposes unrelated to propensity. *See* Evid. R. 404(b)(2); *Baker*, 997 N.E.2d at 70. In assessing the admissibility of evidence under Evid. R. 404(b), the trial court must: (1) determine whether the evidence of a crime, wrong, or other act is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect. *Baker*, 997 N.E.2d at 70.

[13]  The evidence related to Ward's general viewing of pornography was brief and unspecific. The entirety of Lt. Anderson's testimony in this regard follows:

Q.    Did the topic of pornography ever come up in discussing these issues with him?

A.    Yes, ma'am.  I spoke to him about pornography, asked him if he watched pornography, how he watched pornography, how often did he watch pornography, and if he watched pornography with his wife.

Q.    What were his responses to those questions about the kind of pornography topic?

A.    He stated that he did not have a stash of pornography.  He watched the pornography off the Internet.  I believe his comment was "like every guy does."  He also stated that he watched pornography with his wife, and that they didn't watch it to get aroused, but they more so watched it for comedy.

*Transcript, Vol. IV* at 80-81.

[14]    This evidence supported G.H.'s testimony that Ward showed her pornographic videos over the Internet on his computer.  Moreover, it is apparent that the evidence was not used by the State to show that Ward was of bad character or had a propensity to commit the charged acts.  *See Pierce v. State*, 29 N.E.3d 1258, 1269 (Ind. 2015) ("testimony that a forensic analysis revealed pornography on [defendant's] computer was not offered to prove [his] character; it supported the young victims' testimony that [defendant] exposed them to pornography").  Finally, because the probative value of this evidence was not outweighed by any danger of unfair prejudice, we affirm the trial court's admission of it.

## 2. Sufficiency of the Evidence

In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses.[3] *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id*. If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crimes charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). Finally, it is well established that the uncorroborated testimony of a victim alone is sufficient to support a conviction for child molesting.[4] *See Deaton v. State*, 999 N.E.2d 452, 456 (Ind. Ct. App. 2013), *trans. denied*.

With respect to his sufficiency challenge, Ward asserts that the case against him rested solely on the uncorroborated testimony of G.H. and notes that G.H.'s

---

[3] Ward improperly suggests that our role on appeal is to "assess the caliber and quality of the relevant evidence." *Appellant's Brief* at 17.

[4] Citing *Anderson v. State*, 790 N.E.2d 146, 148 (Ind. Ct. App. 2003), *trans. denied*, Ward seems to argue that testimony solely from the alleged victim may not be sufficient evidence to affirm a conviction for child molesting on appeal. *Anderson*, however, is inapposite here because it did not address a challenge to the sufficiency of the evidence.

disclosure did not occur until almost eighteen months after the alleged abuse. He also claims that the jury's verdict of not guilty on Count II demonstrates that the jury had concerns regarding G.H.'s credibility.

[17] We reject this blatant invitation for us to reweigh the evidence, judge G.H.'s credibility, and disregard her testimony. G.H. unequivocally testified that Ward touched her "[w]ith his private part and with his hand"[5]. *Transcript, Vol. IV* at 14. During the summer that she lived with him, G.H. turned eight years old and Ward was nearly forty years old. At trial, G.H. explained how Ward would rub and put his finger "[i]n [her] private part" while she lay in bed next to him. *Id.* at 16. This evidence was sufficient to support Ward's conviction for class A felony child molesting. *See* Ind. Code § 35-42-4-3(a)(1) (defining class A felony child molesting as including a person at least twenty-one years of age who, with a child under fourteen years of age, performs deviate sexual conduct) (former version effective until July 1, 2014). G.H. also testified that Ward made her touch his private part with her hand while he molested her in bed. This evidence was sufficient to establish class C felony child molesting. *See* I.C. § 35-42-4-3(b).

[18] In addition to the repeated molestations, G.H. testified that Ward showed her things on his computer over the Internet that she was not supposed to see – "Like people being touched videos." *Transcript, Vol. IV* at 26. She explained

---

[5] During her testimony, the State clarified that G.H. referred to Ward's penis as "his private part" and her vagina as "my private part."

that the people on the videos had their clothes off and were touching their private parts. These videos, according to G.H., included both adults and "younger people". *Id.* at 29. This evidence was clearly sufficient to establish class D felony dissemination of matter harmful to minors. *See* Ind. Code 35-42-4-3(a)(1) (former version effective until July 1, 2014).

[19] Finally, with respect to the issue of sufficiency of the evidence, we find insignificant the fact that the jury acquitted Ward on Count II, while finding him guilty on the other counts. This shows that the jury closely considered the evidence, not that the jury had concerns regarding G.H.'s credibility.

### 3. Sentence

[20] Ward also challenges his aggregate sentence of forty-nine years as inappropriate. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Alvies v. State*, 905 N.E.2d 57, 64 (Ind. Ct. App. 2009) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218). This appellate authority is implemented through Ind. Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Anglemyer*, 868 N.E.2d at 491. Nevertheless, "we must and should exercise deference to a trial court's

sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The appellant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[21] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). "The principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[22] To assess the appropriateness of a sentence, we look first to the statutory ranges established for the classification of the relevant offenses. A class A felony has a sentencing range of twenty to fifty years, with the advisory sentence being thirty years. Ind. Code § 35-50-2-4(a). The sentencing range for a class C felony is two to eight years, with an advisory sentence of four years. I.C. § 35-50-2-6(a).

Finally, the range for a class D felony is six months to three years, with the advisory being one and one-half years. I.C. § 35-50-2-7(a). Thus, Ward faced an aggregate sentencing range of twenty to fifty-seven years in prison for his crimes against G.H. The trial court imposed an aggregate sentence of forty-nine years, with ten of those years suspended to probation.[6]

[23] In challenging the appropriateness of his sentence, Ward initially argues that there was nothing "particularly outrageous" about his crimes that would distinguish them from "what the Legislature would inherently consider as part of the offense in establishing the advisory offenses." *Appellant's Brief* at 23. We cannot agree. G.H. was of tender age - well below the age of fourteen - when Ward violated his position of trust and molested her.[7] Further, contrary to his assertions on appeal, the evidence establishes that he molested her on a number of occasions over a period of months. He was even so brazen as to commit his crimes on occasion when one or more members of the household were at home.

[24] Turning to Ward's character, we acknowledge that friends and family members wrote letters in support of Ward, including his wife of twenty-five years, and that he does not have any prior criminal convictions. This is not to say, however, that he has otherwise lead a law-abiding life. The record reflects that

---

[6] Specifically, Ward received the advisory sentence on Counts III and IV and a partially-suspended aggravated sentence on Count I.

[7] "The younger the victim, the more culpable the defendant's conduct." *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011). And a "harsher sentence is also more appropriate when the defendant has violated a position of trust". *Id.*

at the time of sentencing in this case, Ward had another pending child molesting case involving an offense that allegedly occurred in August 2014. *See Haddock v. State*, 800 N.E.2d 242, 247 (Ind. Ct. App. 2003) ("Arrests that take place after the crime for which the sentence is being imposed are proper considerations in sentencing.").

[25] After considering the nature of the offenses and Ward's character, we conclude that the forty-nine-year aggregate sentence, with ten years suspended to probation, is not inappropriate.

[26] Judgment affirmed.

Kirsch, J. and Mathias, J., concur.