ATTORNEYS FOR APPELLANT
P. Jeffrey Schlesinger
Office of the Public Defender
Crown Point, Indiana

Mark A. Bates
Schererville, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine M. Cooper
Andrew A. Kobe
Deputy Attorneys General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Jun 22 2017, 1:01 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 45S03-1703-CR-169

SUMMER SNOW,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

Appeal from the Lake Superior Court Criminal Division 1, No. 45G01-1412-F5-42
The Honorable Salvador Vasquez, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-1605-CR-1175

**June 22, 2017**

**Rush, Chief Justice.**

Every crime has a story. But when that story is told at trial, each part must be admissible under Indiana's Rules of Evidence—simply being part of the story is not enough. We thus reiterate today our holding from over twenty years ago: *res gestae*—the common-law doctrine that made evidence admissible when it was part of a crime's story—is no more.

Here, Summer Snow carried a handgun as she battered Officer Terry Peck and resisted law enforcement. Though she was not charged with a firearm-related offense, the State introduced her gun into evidence at trial. Without *res gestae* as grounds for admission, our question becomes whether the gun is admissible under Indiana's Rules of Evidence. We hold that it is. The trial court acted within its discretion in finding the gun relevant to Snow's aggressive state of mind and in determining that the danger of unfair prejudice did not substantially outweigh that relevance. We affirm the trial court.

## Facts and Procedural History

One November morning, before daybreak, Summer Snow was fighting with her boyfriend, Reginald Harris. She called the police twice during the fight, but cancelled each call before anyone responded. She eventually kicked Harris out of her house, and he took refuge in the driveway in the back seat of her car. Snow tried to kick him out of her car as well, calling the police for a third time when he refused to leave.

When Officer Terry Peck arrived, he asked Harris to step out of the car. Harris refused, so Peck tried to remove him—resulting in a scuffle where Harris pulled Peck into the car and hit him repeatedly. Snow then began shouting, disparaging Officer Peck and encouraging Harris to beat him up.

Officer Peck eventually handcuffed Harris and placed him in the back of a patrol car, but Snow continued screaming at both Peck and Harris. Peck asked for her identification and, when she refused to show it, cautioned her to stop shouting and go inside the house or else she would go to jail for disorderly conduct. He then heard the house door open and shut and assumed Snow had gone inside. But she soon stormed back out, resuming the stream of shouting.

After three more warnings, Snow screamed "I dare your b**** a** to arrest me." Officer Peck then tried to arrest her, but she tucked her hands under her sweatshirt. He managed to grab one of her wrists, leading her to punch him, hit his shoulders, and scratch his chin. As they continued to struggle, she jumped on him and began biting his shoulder close to his neck. Finally, Officer Peck restrained Snow and—as he handcuffed her—felt something hit his knee

and boot and heard it land on the ground. As Officer Peck soon learned, that something was a gun.[1]

The State charged Snow with two counts of Level 5 felony battery against a public safety official, and one count each of Level 6 felony resisting law enforcement and Class B misdemeanor disorderly conduct. It charged Harris with Level 5 felony battery against a public safety official and Level 6 felony resisting law enforcement.[2] Neither Harris nor Snow was charged with a gun-related offense.

Harris and Snow each filed a motion in limine to stop the State from referring to Snow's gun at trial. They argued that because Officer Peck learned about the gun only after arresting Snow, the State was merely speculating about the gun's relevance; therefore, the danger of unfair prejudice substantially outweighed any probative value under Indiana Rule of Evidence 403. The State responded that because Snow may have gone into the house to get the gun, it was relevant to show "some sort of aggression." The trial court agreed with the State that the gun was "significantly probative of the defendant's action" and her "aggressive manner," and held that "403 gives the balance in favor of the State" because the prejudice from the gun did not substantially outweigh that relevance.

At the ensuing joint jury trial, the same attorney represented both Snow and Harris. The State introduced the gun into evidence over Harris and Snow's objection, using it to argue that because Snow was carrying the gun, she—not Officer Peck—was the aggressor. And because Snow was not licensed to carry the gun, the State used it to cast doubt on her testimony that she had it to protect herself on a trip to the gas station. Snow responded that she was not carrying the gun that day, but left it in her car. Because of this argument, the trial court instructed the jury that "[a] person may carry a handgun without being licensed if the person carries [it] . . . in or on property that is owned, leased, rented, or otherwise legally controlled by the person."

---

[1] The location of Snow's gun was contested at trial. Snow testified that she left her gun on the front seat of her car, and was not carrying it that morning. But we view the facts in the light most favorable to the trial court's ruling. Griffith v. State, 788 N.E.2d 835, 839–40 (Ind. 2003).

[2] We affirm Harris's convictions on these charges in today's companion opinion: Harris v. State, No. 45S03-1703-CR-172, ___ N.E.3d ___ (June 22, 2017).

The jury found Snow guilty of one count of Level 5 felony battery against a public safety official and one count of Level 6 felony resisting law enforcement, and acquitted her of the other two counts. It found Harris guilty as charged. Both defendants appealed, now with separate attorneys, challenging the gun's admission at trial. The State responded that the gun was properly admitted "because it was inextricably linked to the charged crimes."

The Court of Appeals affirmed in a split decision. The majority found that the gun was admissible because it "*explained the circumstances and context* of the extended verbal and physical altercations between Snow and Officer Peck." Snow v. State, 65 N.E.3d 1129, 1134 (Ind. Ct. App. 2016) (emphasis added). Chief Judge Vaidik dissented, believing that the majority improperly affirmed under the long-defunct *res gestae* grounds for admissibility. Id. at 1136 (Vaidik, C.J., dissenting).

Snow petitioned for transfer, arguing that the Court of Appeals improperly relied on *res gestae* in admitting the gun. The State did not respond. We granted transfer, thus vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

**Standard of Review**

The trial court admitted Snow's gun over her objection; we review this evidentiary ruling for an abuse of discretion. Zanders v. State, 73 N.E.3d 178, 181 (Ind. 2017). An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances. Id.

A trial court's discretion is wide on issues of relevance and unfair prejudice. Hicks v. State, 690 N.E.2d 215, 220 (Ind. 1997); Dunlap v. State, 761 N.E.2d 837, 842 (Ind. 2002). In our review, we look to the totality of the circumstances and consider conflicting evidence in the light most favorable to the trial court's ruling. Griffith v. State, 788 N.E.2d 835, 839–40 (Ind. 2003).

**Discussion and Decision**

*Res gestae*—the common-law doctrine that made evidence admissible as part of a crime's story—did not survive the adoption of Indiana's Rules of Evidence in 1994. That is, *res gestae* is no longer a proper basis for admitting evidence; instead, admissibility is determined under Indiana's Rules of Evidence. Applying those rules, we affirm the trial court because admitting Snow's gun into evidence was within the court's discretion.

**I.** ***Res Gestae* Did Not Survive the Adoption of Indiana's Rules of Evidence.**

"*Res gestae* [was] a term regularly used in Indiana's common law of evidence to denote facts that are part of the story of a particular crime." Swanson v. State, 666 N.E.2d 397, 398 (Ind. 1996). When those facts completed the crime's story, they were admissible under the doctrine—even if they concerned uncharged misconduct. Id.; Pitman v. State, 436 N.E.2d 74, 77 (Ind. 1982).

This *res gestae* standard made evidence admissible for over a century. See Gallaher v. State, 101 Ind. 411, 412 (1885) ("What is said and done by persons during the time they are engaged in a riot constitutes the *res gestae*, and it is, of course, competent to prove all that is said and done."). But as we held in Swanson, *res gestae*—an "imprecise concept" and "all too easy substitute for describing the legal relevance of a particular piece of evidence"—did not survive the 1994 adoption of our Evidence Rules. 666 N.E.2d at 397–98; see also Specht v. State, 734 N.E.2d 239, 240 (Ind. 2000) (recognizing that "the Rules of Evidence generally superseded previously existing common law"). Of course, "the great majority" of evidence formerly admitted as *res gestae* will continue to be admitted under the relevance provisions of Evidence Rules 401, 402, and 403. Swanson, 666 N.E.2d at 399; see also Escamilla v. Shiel Sexton Co., 73 N.E.3d 663, 668 (Ind. 2017). It is now those rules—not *res gestae*—that decide evidence's relevance and admissibility. Put simply, *res gestae* is no more.

But the *res gestae* concept has crept back into Indiana law since Swanson. As Chief Judge Vaidik aptly illustrated in her dissent, Indiana courts have several times applied an "inextricably bound up" standard for evidence's admissibility. Sandifur v. State, 815 N.E.2d 1042, 1048 (Ind. Ct. App. 2004), trans. denied; Willingham v. State, 794 N.E.2d 1110, 1116–17 (Ind. Ct. App. 2003); Cowan v. State, 783 N.E.2d 1270, 1275 (Ind. Ct. App. 2003), trans. denied; Pope v. State, 740 N.E.2d 1247, 1250–51 (Ind. Ct. App. 2000); Sanders v. State, 724 N.E.2d 1127, 1131 (Ind. Ct. App. 2000); Utley v. State, 699 N.E.2d 723, 728–29 (Ind. Ct. App. 1998), trans. denied. And *res gestae* has made its mark on this case as well: the State argued on appeal that Snow's gun was "inextricably linked" to her crimes, and the Court of Appeals majority found that it was part of "the circumstances and context" of her fight with Officer Peck. Snow, 65 N.E.3d at 1134.

Under Swanson and our Rules of Evidence, though, the many flavors of *res gestae*—"inextricably bound up," "inextricably intertwined," "circumstances and context," and "part and parcel," to name a few—are not proper grounds for admissibility. See Swanson, 666 N.E.2d at 398; Pope, 740 N.E.2d at 1250–51. We thus disapprove of the "inextricably bound up" standard and disagree with the State's reliance on it. And we reject the Court of Appeals' reasoning that Snow's gun was admissible because it explained "the circumstances and context" of her crimes. Snow, 65 N.E.3d at 1134.

But as we observed in Swanson, the "great majority" of evidence formerly admitted as *res gestae* will continue to be admitted under "the legal concepts and vocabulary of the Indiana Rules of Evidence." 666 N.E.2d at 399. We therefore turn to that analysis.

## II. The Trial Court Did Not Abuse Its Discretion in Admitting Snow's Gun.

"Trial judges are called trial judges for a reason. The reason is that they conduct trials. Admitting or excluding evidence is what they do." United States v. Hall, ___ F.3d ___, ___ (4th Cir. 2017) (Wilkinson, J., dissenting). That's why trial judges have discretion in making evidentiary decisions. This discretion means that, in many cases, trial judges have options. They can admit *or* exclude evidence, and we won't meddle with that decision on appeal. See Smoote v. State, 708 N.E.2d 1, 3 (Ind. 1999). There are good reasons for this. "Our instincts are less practiced than those of the trial bench and our sense for the rhythms of a trial less sure." Hall, ___ F.3d at ___. And trial courts are far better at weighing evidence and assessing witness credibility. Carpenter v. State, 18 N.E.3d 998, 1001 (Ind. 2014). In sum, our vantage point—in a "far corner of the upper deck"—does not provide as clear a view. State v. Keck, 4 N.E.3d 1180, 1185 (Ind. 2014).

This case illustrates these principles. Snow argues that her gun was not relevant under Rule of Evidence 401 and that its probative value was substantially outweighed by the danger of unfair prejudice under Rule 403. Trial courts have wide discretion in both determinations. Often, including here, these determinations can be resolved either way. We thus conclude that the trial court did not abuse its discretion in finding the gun relevant and admissible.

6

A. *The trial court was within its discretion in finding Snow's gun relevant to her aggressive state of mind.*

Evidence is relevant when it has "any tendency" to prove or disprove a consequential fact. Escamilla, 73 N.E.3d at 668. This "liberal standard for relevancy" sets a low bar, id. at 670 (quoting Konopasek v. State, 946 N.E.2d 23, 27 (Ind. 2011)), and the trial court enjoys "wide discretion" in deciding whether that bar is cleared. Hicks, 690 N.E.2d at 220.

The State argues that Snow's gun is relevant because it shows her aggression in committing battery against a public safety official and resisting law enforcement. Aggression is part of both crimes; battery against a public safety official requires that the defendant's actions be "rude, insolent, or angry," Ind. Code § 35-42-2-1 (2014), and resisting law enforcement requires that a defendant "forcibly" resist, obstruct, or interfere with a law enforcement officer, I.C. § 35-44.1-3-1 (2014). See also Barnes v. State, 946 N.E.2d 572, 578 (Ind. 2011) (noting the aggressiveness elements of both battery against a public safety official and resisting law enforcement). Evidence of a defendant's aggressive state of mind is thus relevant to these charges.

And the trial court was within its discretion in concluding that Snow's gun tended to show her aggressive state of mind. The trial court noted that the jury could decide that "Snow was acting in the aggressive manner to perhaps conceal a weapon . . . that was not there at one point, [but] certainly appears later on." Specifically, it recognized that Snow could have fetched the gun while she was in her house in the middle of this incident, and that it could have emboldened her aggression. Viewed in the light most favorable to the trial court's ruling, the evidence allows these inferences.

Snow testified at trial that she was headed to the gas station when she discovered Harris in her car. She also testified that because she was not licensed to carry a handgun, she carried it only on her personal property. See I.C. § 35-47-2-1(a), (b)(1) (making it illegal to carry a handgun without a license, except on property "owned, leased, rented, or otherwise legally controlled by the person"). This testimony implies, as the State noted in closing, that Snow didn't have her gun with her at the beginning of the incident, because taking it to the gas station would have been illegal. Yet she was carrying the gun when she was arrested, allowing the inference that she retrieved the gun when she went inside her house at Officer Peck's request.

The trial court also found within its discretion that the gun emboldened Snow's aggression. Before Officer Peck arrested Harris, Snow shouted and cursed, but showed no physical aggression. And when Officer Peck first threatened to arrest her, she retreated into her house. But she didn't stay in the house; she came back outside and *then* began displaying the aggression that underlies her crimes. When Peck again threatened to arrest her, she screamed "I dare your b\*\*\*\* a\*\* to arrest me." He moved to do so, and she tucked her hands under her sweatshirt. When Peck grabbed one of her wrists, she punched him in the arm and face, jumped on him, scratched his chin, and began biting his shoulder and neck area. The timing of Snow's actions shows that the gun could have played a part in this increased aggression.

The gun's relevance to Snow's aggressive state of mind, based on reasonable inferences, is also what distinguishes this case from our decision in Hubbell v. State. 754 N.E.2d 884 (Ind. 2001). In Hubbell, the trial court admitted a gun and bullets found months after the charged murder, even with "no evidence that the gun was in any way connected" with the crime. Id. at 889. We found an abuse of discretion, because any relevance was "no more than speculation given the absence of any other evidence suggesting the use of a weapon." Id. Here though, the relevance of Snow's gun was based on trial evidence regarding her aggressive state of mind in committing battery on a public safety officer and in resisting law enforcement. We cannot say that the trial court abused its discretion in finding the gun relevant.

Ultimately, the connections may be thin, but they allowed the trial court to conclude that Snow's gun was relevant to show her aggressive state of mind in committing battery on a public safety official and resisting law enforcement. Still, evidence relevant under Rule 401 should nonetheless be excluded under Rule 403 when its risks—including unfair prejudice—substantially outweigh its relevance.

*B. The trial court was within its discretion in deciding that the gun's relevance was not substantially outweighed by the danger of unfair prejudice.*

Under Indiana Rule of Evidence 403, "relevant evidence may be excluded 'if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.'" Escamilla, 73 N.E.3d at 668 (quoting Ind. Evid. R. 403). As with relevance under Rule 401, this balancing is committed to the trial court's discretion. Dunlap, 761 N.E.2d at 842.

The trial court could have excluded or admitted Snow's gun within that discretion. But it resolved the 403 balancing in favor of the State because while the gun was prejudicial, there was "sufficient probative value to override the prejudicial nature of the information." And the trial court minimized any prejudice by instructing the jury about when a handgun is lawfully or unlawfully carried.

Even though "the possession of a firearm, generally speaking, is not a misdeed," Fuentes v. State, 10 N.E.3d 68, 73 (Ind. Ct. App. 2014), trans. denied, it can be unfairly prejudicial, see Hubbell, 754 N.E.2d at 890 (agreeing that "the introduction of weapons . . . *may* have a prejudicial effect" (emphasis added)). We have held that the unfair prejudice from a gun's admission is heightened when it "suggest[s] another uncharged crime." Jervis v. State, 679 N.E.2d 875, 878 (Ind. 1997); see also Heavrin v. State, 675 N.E.2d 1075, 1084 (Ind. 1996).

Snow contends that her gun rises to that high level of unfair prejudice because the State argued that she was breaking the law by carrying it without a license. True, the State went too far in asking whether Snow's gun was "registered to" her,[3] even after the trial court barred a similar question. And the State should not have gratuitously referred to the gun as "unregistered" in its closing argument. But the State did not, as Snow alleges, accuse her of breaking the law by carrying her gun without a license. The State instead argued that Snow wasn't going to take her gun to the gas station, because *that* would have been illegal—and so she must have had it because she was escalating the situation with Officer Peck. And in any event, the jury was instructed that "[a] person may carry a handgun without being licensed if the person carries [it] . . . in or on property that is owned, leased, rented, or otherwise legally controlled by the person." So the State did not suggest—at least not more than tangentially—an uncharged crime.

The unfair prejudice from Snow's gun, then, was not so high that it overrode the trial court's wide discretion. See Dunlap, 761 N.E.2d at 842. We thus decline to second-guess the trial court's determination that the gun's relevance to her aggressive state of mind was not substantially outweighed by the danger of unfair prejudice. The trial court could have admitted

---

[3] As Chief Judge Vaidik's dissenting opinion observes, "there is no handgun 'registration' requirement in Indiana." Snow, 65 N.E.3d at 1138. But here, the parties appear to have understood the question to mean whether Snow was licensed to carry a handgun under Indiana Code chapter 35-47-2.

or excluded the gun. The trial court chose admission, and on this contested record that choice was not an abuse of discretion.

## Conclusion

Because *res gestae* is no more, we consider evidentiary admissibility under our Rules of Evidence. Under those rules, the trial court was within its discretion in deciding that Snow's handgun was relevant to her aggressiveness, and that the danger of unfair prejudice did not substantially outweigh its probative value. We affirm the trial court.

David, Massa, and Slaughter, JJ., concur.