## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 13 2018, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott King
Russell W. Brown, Jr.
King, Brown & Murdaugh, LLC
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles Gerron,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 13, 2018

Court of Appeals Case No.
18A-CR-393

Appeal from the La Porte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause No.
46D01-1612-MR-8

**Najam, Judge.**

## Statement of the Case

Charles Gerron appeals his conviction for murder, a felony. Gerron raises four issues for our review, which we restate as the following two issues:

1. Whether the trial court abused its discretion in the admission of certain evidence.

2. Whether the State presented sufficient evidence to support his conviction.

We affirm.[1]

## Facts and Procedural History

On July 24, 2011, three girls held a joint Sweet-16 birthday party at Krueger Memorial Hall in Michigan City. About 125 people attended, including numerous other teenagers. Gerron, a juvenile at the time, attended, as did fellow juveniles Cameron Kent, Skyiesha Pender, Ne'Keisha Hodges, James Sanders, Michael Cooper, and Jamiela Hodges. Prior to the party that day, Kent had seen Gerron with a .38 caliber handgun. And, at the party, Pender observed Gerron with a revolver.

Around 11:00 p.m., the party ended, and a large group of guests—about twenty-five to thirty people, including Kent, N. Hodges, and Sanders—began

---

[1] Gerron also argues on appeal that he should be released from incarceration "upon remand" under Indiana Criminal Rule 4(A). Appellant's Br. at 19. However, as we affirm Gerron's convictions and do not remand, we need not consider that argument.

walking away from the building and downhill toward Springland Avenue. Cooper also left the party and found Gerron near a moped. Gerron stated that "[h]e needed the moped started just in[ ]case somethin[g] happened." Tr. Vol. III at 101. Cooper left Gerron and joined the crowd walking toward Springland Avenue.

[5] Gerron then shot his firearm into the crowd three times. Gerron struck and killed N. Hodges. He struck and wounded Sanders. Both injuries demonstrated a downward trajectory consistent with the shot having been fired from a higher elevation. The wounds were inflicted with a .38-caliber bullet. Immediately after firing the shots, Gerron ran past Cooper and said, "I just shot that n****r," referring to Sanders. *Id.* at 106. Cooper then saw Gerron run toward his moped. J. Hodges also saw Gerron running after the shots and heard him say, "Come on brah we just shot somebody." Tr. Vol. IV at 250.

[6] Cooper rode home with Gerron's mother. Gerron's cousin, Jerry Lemons, was also in the vehicle. While in the car, Cooper told Lemons that Gerron had shot N. Hodges and Sanders. The three then went to Lemons' house, and Gerron was there when they arrived. Lemons asked Gerron if Gerron had shot N. Hodges and Sanders, and Gerron said, "yeah, I shot three times." Tr. Vol. III at 116. When Lemons told Gerron that Gerron had killed N. Hodges, Gerron "asked for some bleach" to "wash his hands." *Id.*

[7] On December 20, 2016, the State charged Gerron with murder, a felony. During Gerron's ensuing jury trial, the State moved to admit a video-recorded

interview police had conducted with Gerron and Gerron's mother. Gerron objected to the interview on the basis that the statements of Gerron's mother during that interview were inadmissible hearsay. The trial court overruled Gerron's objection, but the court instructed the jury that the statements of Gerron's mother in that exhibit "are not testimony or evidence" and

> may only be considered for the purpose of showing . . . the context of the defendant's comments to the extent that he responded . . . . You may consider only the statements of the defendant as evidence . . . and cannot consider the statements of the defendant's mother . . . as evidence.

Tr. Vol. VI at 73-74. The court repeated its instruction during its final instructions to the jury.

[8] Also during Gerron's trial, the State moved to admit evidence of prior bad acts under Indiana Evidence Rule 404(b). Specifically, the State sought to admit evidence to show that, thirty-four days prior to the shooting, Gerron had been admitted to a local hospital's emergency room after a firearm he had been carrying in his pants discharged and wounded him. The State's evidence also showed that, in the course of a police investigation into that incident, Gerron had lied to an investigating officer by stating that he had been shot by a third party. The trial court admitted the State's 404(b) evidence over Gerron's objection.

[9] Following the trial, the jury found Gerron guilty of murder, a felony. The trial court entered its judgment of conviction and sentenced Gerron accordingly. This appeal ensued.

# Discussion and Decision

## *Issue One: Admission of Evidence*

[10] On appeal, Gerron first asserts that the trial court abused its discretion in the admission of evidence. We review a trial court's evidentiary rulings "for an abuse of discretion." *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances." *Id.* Here, Gerron asserts that the trial court abused its discretion when it admitted the unredacted, video-recorded interview, which, Gerron argues, contained inadmissible hearsay from Gerron's mother. Gerron also contends that the trial court abused its discretion when it admitted evidence of Gerron's gunshot incident from thirty-four days prior to the shooting that resulted in the death of N. Hodges. We address each argument in turn.

### *Hearsay*

[11] Gerron first asserts that his mother's statements in the video-recorded interview were inadmissible hearsay. Hearsay is a statement "not made by the declarant while testifying at the trial or hearing" that is "offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Out-of-court statements offered for a reason other than to prove the truth of the matter

asserted are not hearsay.  *See id.*; *Williams v. State*, 930 N.E.2d 602, 608 n.3 (Ind. Ct. App. 2010), *trans. denied*.  For example, we have recognized that an out-of-court statement is "nonhearsay" when it "merely provided context for [the defendant's] own recorded statements."  *Williams*, 930 N.E.2d at 609.

[12]  Here, the trial court declined to order the State to redact Gerron's mother's statements from the interview because the court concluded that her statements were not being offered for their truth but, rather, for context to Gerron's own recorded statements.  Indeed, while on appeal Gerron isolates a handful of sentences from the lengthy interview, he ignores the interplay between him, his mother, and the investigating officers during the interview.  As the State summarized to the trial court:

> there are all kinds of statements made during this interview, but all of them are necessary for the context of the interview.  His mother responds to a question, [Gerron] responds to a question[, o]ften times elaborating upon or discussing what his mother has said.  But it's not offered for the truth of the matter asserted[. I]t's offered for the context of the conversation generally.

Tr. Vol. V at 197-98.  We agree.  As Gerron's mother's statements were not offered for the truth of the matters asserted, they were not hearsay.

[13]  Moreover, Gerron's argument on appeal disregards the trial court's limiting instruction, in which the court expressly instructed the jury that Gerron's mother's statements were not evidence, could not be considered as evidence, and were being admitted only to provide context to Gerron's own statements.  We presume the jury follows the trial court's instructions.  *E.g.*, *Harris v. State*,

824 N.E.2d 432, 440 (Ind. Ct. App. 2005). We cannot say that the trial court abused its discretion when it admitted Gerron's mother's statements for context, which admission the court coupled with a clear limiting instruction. We affirm the court's admission of this evidence.

*Prior Bad Acts*

[14] Gerron also contends that the trial court abused its discretion when it admitted evidence of the gunshot incident that occurred thirty-four days before N. Hodges' death. Gerron's specific argument on this issue is unclear, but it appears to be that the trial court abused its discretion under Indiana Evidence Rule 403. Under that Rule, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Evid. R. 403. "[T]his balancing is committed to the trial court's discretion," and, where the unfair prejudice is "not so high that it overrode the trial court's wide discretion," we will not reverse. *Snow*, 77 N.E.3d at 179. In other words, we will not "second-guess the trial court's determination" under Rule 403 where the court "could have admitted or excluded" the evidence. *Id.*

[15] We cannot say that the danger of unfair prejudice here was so high that it overrode the trial court's wide discretion under Rule 403. The evidence of the gunshot incident demonstrated that Gerron had access to a firearm and, thus, the opportunity to commit the crime alleged. *See* Evid. R. 404(b)(2). The trial court did not abuse its discretion when it admitted the evidence.

### *Issue Two: Sufficiency of the Evidence*

[16]     Finally, Gerron argues that the State failed to present sufficient evidence to show that he committed murder, a felony. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010). We look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.*

[17]     To prove that Gerron committed murder, the State was required to show that Gerron knowingly or intentionally killed another human being. Ind. Code § 35-42-1-1(1) (2011). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). "A knowing killing may be inferred from the use of a deadly weapon in a way likely to cause death." *Young v. State*, 761 N.E.2d 387, 389 (Ind. 2002).

[18]     According to Gerron, "[t]he State failed to present any evidence that Gerron knew . . . that when he fired three shots blindly down a hill into a crowd . . . that there was a high probability [N. Hodges] would die." Appellant's Br. at 20. We cannot agree. A reasonable trier of fact could readily conclude that Gerron knowingly killed N. Hodges when he fired a deadly weapon into a crowd. *See Young*, 761 N.E.2d at 389. Moreover, the State's

evidence demonstrated that Gerron had a .38 caliber firearm on his person at the party. The State's evidence further demonstrated that, immediately before the shooting, Gerron had started his moped "in[ ]case somethin[g] happened," Tr. Vol. III at 101, and that, immediately after the shooting, several witnesses observed him fleeing the scene while saying he had fired his gun into the crowd. And, later that night, when he learned of N. Hodges' death, Gerron asked for bleach to wash his hands.

[19] The State presented sufficient evidence to show that Gerron knowingly killed N. Hodges. We affirm his conviction for murder, a felony.

[20] Affirmed.

Crone, J., and Pyle, J., concur.