

FILED

Nov 26 2018, 7:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael P. DeArmitt
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Laura R. Anderson
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Trey A. Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 26, 2018

Court of Appeals Case No.
18A-CR-1023

Appeal from the Bartholomew
Superior Court

The Honorable James D. Worton,
Judge

Trial Court Cause No.
03D01-1712-F6-6683

**Najam, Judge.**

## Statement of the Case

[1] Trey Smith appeals his convictions for theft, as a Level 6 felony, and criminal mischief, as a Class B misdemeanor, following a jury trial. Smith presents a single issue for our review, namely, whether the trial court abused its discretion

when it admitted certain testimony over his objections. We also address a second issue *sua sponte*, namely, whether Smith's convictions violate his right to be free from double jeopardy. We affirm in part, reverse in part, and remand with instructions.[1]

## Facts and Procedural History

On December 6, 2017, at approximately 8:20 p.m., Melissa Shafer left her office and walked out to the parking lot, where she found a man lying on the ground next to her car. Shafer asked the man what he was doing, but he did not reply. She asked him a second time, and he responded, "Let me get out of your way." Tr. at 25. Shafer then saw the man pull up a tarp and gather some tools, and he ran past her toward the office building and out of sight. Shafer got in her car and started the engine. She immediately noticed that the engine was "very loud" and she "knew the mechanics had been messed with." *Id.* at 27. Accordingly, she promptly called 9-1-1 and gave a description of the man she had seen next to her car. She saw that the man was wearing "dark colored or black pants and a black zip up hoodie with white lettering on the back of it." *Id.* at 34. A police officer arrived at the scene within three to five minutes and found that the catalytic converter on Shafer's car had been cut and was "hanging down and touching the ground." *Id.* at 51.

---

[1] We held oral argument in this case on November 5, 2018, at Tri-West High School in Lizton. We thank counsel for their excellent advocacy and extend our appreciation to the faculty, staff, and students of Tri-West High School for their hospitality.

[3]     Within three minutes of hearing the suspect's description over his radio, Officer Ron May of the Columbus Police Department, who was patrolling in the area, saw a man fitting the suspect's description "jogging across the road in a southeasterly direction" near the intersection of U.S. 31 and Washington Street. *Id.* at 39. Officer May saw the man near a Village Pantry, but he lost sight of him. Officer May soon saw the man again walking to the south of a nearby building. Officer May then stopped and talked to the man, who identified himself as Smith.

[4]     Officer May asked Smith "where he was coming from," and Smith replied that he had just been at Chris Chaplin's residence at 3220 Washington Street. *Id.* at 43. While Officer May was talking to Smith, Officer Tony Kummer, who had responded to the scene at Shafer's office parking lot, drove Shafer to the location where Officer May and another officer were talking to Smith. Shafer identified Smith as the man she had seen next to her car. Officers arrested Smith. At some point, Officer May went to the residence at 3220 Washington Street and talked to the owner, who stated that he did not know Smith.

[5]     The State charged Smith with attempted theft, as a Level 6 felony, and criminal mischief, as a Class B misdemeanor. At Smith's ensuing jury trial, Officer May testified in relevant part that he had found no one at the residence at 3220 Washington Street who knew Smith, and Smith timely objected to that testimony on hearsay grounds. The trial court permitted the testimony over Smith's objections. The jury found him guilty as charged, and the trial court

entered judgment of conviction and sentenced him accordingly. This appeal ensued.

## Discussion and Decision

### *Issue One: Hearsay*

[6] Smith contends that the trial court abused its discretion when it admitted Officer's May's testimony as evidence over Smith's hearsay objections. We review a trial court's evidentiary rulings "for an abuse of discretion." *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances." *Id.*

[7] Hearsay is a statement "not made by the declarant while testifying at the trial or hearing" that is "offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). And a "statement" means "a person's oral assertion, written assertion, or nonverbal conduct if the person intended it as an assertion." Evid. R. 801(a). At trial, during the State's direct examination of Officer May, Smith made two hearsay objections during the following colloquy:

> Q: Um, after you talked to [Smith,] later on did you go to that house [at 3220 Washington Street] where he said he was[ prior to his arrest]?
>
> A: Yes.
>
> Q: And did you find anyone in the residence who knew the defendant?
>
> [Defense counsel]: Objection that's calling for hearsay.

Q: I'm not asking what they said Judge I'm just asking if anyone knew of him.

COURT: Ok, overruled.

Q: Did you find anybody at the house who knew the defendant?

A: No.

\* \* \*

Q: And you did speak with owner of the house is that correct?

A: I did.

Q: Um did that person know Trey Smith?

[Defense counsel]: Objection once again I mean he's only going to know him by answering a question that the officer asked, hearsay.

COURT: Response?

Q: Again I'm not asking for him to repeat what he said I'm asking if, if the individual knew who Trey Smith was.

COURT: Overruled.

Q: Did he know who Trey Smith was?

A: No.

Tr. at 43-45.

[8] On appeal, Smith asserts that the trial court abused its discretion when it permitted the testimony over his timely objections. He maintains that, because

Officer May could not have learned whether anyone at the residence knew Smith without having asked them, Officer May "was merely a conduit for the out-of-court statements made by those persons present" at the residence. Appellant's Br. at 12. Thus, he contends that those statements constitute inadmissible hearsay. The State responds that the challenged testimony did not constitute hearsay because "Officer May did not testify about anyone's statement . . . [or] repeat anyone's assertion." Appellee's Br. at 7. We agree with Smith.

[9] While Officer May did not repeat a declarant's statement, *per se*, he testified to information that could only have been obtained through statements made by the person or persons he had questioned at the residence Smith claimed to have visited before his arrest. Thus, those out of court statements were embedded in Officer May's testimony and were the predicate for that testimony, which was equivalent to repeating the declarant's out-of-court statements. And Officer May's testimony was offered to discredit Smith with proof that no one at the residence knew Smith; that is, the testimony was offered for the truth of the matter asserted. Accordingly, we hold that the challenged testimony was hearsay, and the trial court abused its discretion when it overruled Smith's timely objections.

[10] However, it is well settled that the erroneous admission of hearsay testimony does not require reversal unless it prejudices the defendant's substantial rights. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014). To determine whether an evidentiary error was prejudicial, we assess the probable impact the evidence

had upon the jury in light of all of the other evidence that was properly presented. *Id.* If we are satisfied the conviction is supported by independent evidence of guilt such that there is little likelihood the challenged evidence contributed to the verdict, the error is harmless. *Id.*

[11] Here, we are convinced that there is little likelihood that Officer May's testimony that no one at 3220 Washington Street knew Smith contributed to the verdict. Although the evidence discredited Smith's statements to officers on the scene, at trial Smith did not assert an alibi defense but instead argued only that Shafer had misidentified him as the man she had seen in the parking lot next to her car. Because Smith did not contend at trial that he had been visiting someone at that residence before his arrest, Officer May's hearsay testimony was not integral to Smith's defense.

[12] While Officer May's hearsay testimony prejudiced Smith in that it was impeaching, the independent evidence of Smith's guilt persuades us that the evidence of Smith's untruthfulness did not likely contribute to the guilty verdict. In particular, Shafer testified that, when the officers drove her to the location of Smith's arrest shortly after the incident, she was "100%" certain that he was the man she had seen in the parking lot. Tr. at 30. While Smith points out that it was dark at the time of the offense and Shafer has a vision impairment in one eye, the State presented evidence that the parking lot and exterior of the office building were well lit at the time of the offenses, and Shafer testified that she wears glasses and has "no problem seeing anything[.]" *Id.* at 34. In addition, Officer May found Smith, who fit the description given by Shafer, within three

minutes of hearing the suspect's description over his radio and at a location near Shafer's office building. Thus, we hold that the trial court's admission of Officer May's hearsay testimony was harmless error.

### Issue Two: Double Jeopardy

[13] We next address, *sua sponte*, whether Smith's convictions violate his right to be free from double jeopardy under Indiana law. Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Our Supreme Court has interpreted that clause to prohibit multiple convictions based on the same "actual evidence used to convict." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Our Supreme Court has also "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy[] but are not governed by the constitutional test set forth in *Richardson*." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quotation marks omitted). One such rule prohibits "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Id.* In *Taylor v. State*, we acknowledged that the very same act test is different than the actual evidence test, and we held that the very same act test applies when the defendant's "behavior" underlying one offense is "coextensive with the behavior . . . necessary to establish an element of" another offense. 101 N.E.3d 865, 972 (Ind. Ct. App. 2018).

[14] Here, Smith's behavior underlying the attempted theft is coextensive with the behavior necessary to establish an element of criminal mischief. *See id.* In

particular, the only evidence showing that Smith took a substantial step toward theft of the catalytic converter from Shafer's car was his partial removal of it. *See* Ind. Code § 35-43-4-2.5(b) (2017). And that same behavior was also the only evidence that Smith had damaged or defaced Shafer's car, which was the basis for his criminal mischief conviction. *See* I.C. § 35-43-1-2(a). Thus, we reverse Smith's criminal mischief conviction. We remand with instructions that the trial court vacate Smith's criminal mischief conviction.

Affirmed in part, reversed in part, and remanded with instructions.

Bailey, J., and Altice, J., concur.