## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 10 2020, 10:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Toby Dwayne George,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 10, 2020

Court of Appeals Case No.
19A-CR-1300

Appeal from the Marion Superior Court

The Honorable Barbara Crawford, Judge

Trial Court Cause No.
49G01-1801-MR-2086

**Bailey, Judge.**

# Case Summary

[1] Toby Dwayne George ("George") appeals his convictions for Murder, a felony,[1] and Unlawful Possession of a Firearm by a Serious Violent Felon, a Level 4 felony.[2] He presents the sole issue of whether the trial court abused its discretion by admitting into evidence two letters George wrote to his mother during his pretrial incarceration in the Marion County Jail. We affirm.

# Facts and Procedural History

[2] During the early morning hours of January 13, 2018, Larisha Craig ("Craig") arrived at an Indianapolis residence on Wallace Street. She expected to attend a birthday party and make herself available to drive her friend, Candace Brown ("Brown"), home. Immediately upon Craig's entry into the yard, she saw that several people were attempting to eject Brown's boyfriend, George, from the premises. George was "drunk and belligerent" and refusing to leave. (Tr. Vol. II, pg. 161.) On the way out, George kicked a dog, making the dog whimper. The owner of the dog, Terrance Green ("Green"), became enraged upon learning of this, and he twice struck George in the head with a gun.

[3] Craig, George, and Brown left together in Brown's vehicle. George then made a telephone call to say that he needed a gun. Brown drove George to an

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. § 35-47-4-5.

apartment complex where George met up with his sister, Shantel George, and her boyfriend, Anthony Leflore ("Leflore"). Leflore handed George a silver and black .45 caliber handgun. Craig convinced Brown to leave with her, and they headed back to the Wallace Street residence to warn the others that George was armed and threatening retaliation.

[4] Shortly after Craig and Brown arrived at the residence, George arrived, and Brown let him inside. George confronted a man Craig knew as "Goo," demanding "where is his bitch ass son at" and threatening that he was "going to kill him" when he found him. *Id.* at 167. Brown pushed George back outside, then both she and Craig made some warning calls.

[5] Green arrived back at the residence, accompanied by Lawrence Jones, Troy Smith, and Tyrone Burt ("Burt"). By this time, Brown was intoxicated, belligerent, and "getting in their faces." *Id.* at 169. When Brown made some insulting remarks to Burt, he slapped her in the face. Brown then retrieved a knife from the kitchen and a fight ensued between Craig and Brown. Eventually, Craig had Brown subdued on the sofa. George again entered the residence, demanding to know if Burt had "put hands on" Brown; Burt denied doing so. *Id.* at 171.

[6] Craig let Brown get up and Brown left the residence with George. After agreeing to give Craig a ride home, Burt also stepped outside. Craig paused to collect her personal belongings; when she reached the porch, she heard Burt say: "man what are you doing – I thought we were good." *Id.* at 209. Craig

turned to see George aim the weapon that he had just obtained from Leflore and shoot Burt multiple times.[3]

[7] Craig ran to Burt's side as George and Brown drove off. Noticing that Leflore was sitting in his vehicle in the street, Craig implored him to help. Leflore replied, "that m-----f------ is dead," and drove off. *Id.* at 174. Craig called 9-1-1; she subsequently identified George as the shooter.

[8] George was arrested and charged with Murder and Unlawful Possession of a Firearm. While George was incarcerated, jail personnel obtained two letters George had addressed to his mother. One letter concerned coaching George's sister as to alibi testimony, and the second emphasized that Craig should not testify, as her testimony would be very damaging. George filed a pretrial motion in limine, seeking exclusion of the letters; the State argued that the letters demonstrated George's consciousness of guilt. The motion in limine was denied.

[9] George was brought to trial before a jury on April 15, 2019. Craig testified and identified George as Burt's killer. George's jail letters were admitted into evidence over his objection, and ballistics evidence suggested that the murder weapon was a gun Leflore had previously reported as stolen.

---

[3] Craig testified that she heard six or seven shots. The pathologist determined that Burt had eight gunshot wounds to his body.

[10]     The jury convicted George of the charges against him.  On May 10, 2019, George was sentenced to fifty-five years imprisonment for Murder, and was given a concurrent ten-year sentence for the possession offense.  He now appeals.

# Discussion and Decision

[11]     The trial court admitted into evidence, as State's Exhibits 65 and 66, letters that George had written to his mother.[4]  State's Exhibit 65 provided in part:

> Mama, I really, really need you to put pride to the side and talk to this Bitch.  It's the only way I have a chance of beating this case.  My lawyer came to speak to me.  She said I can be home by June if Candy and that other girl her friend misses 3 deposition dates.  Please talk to her and let her know not to come to court on me.  Tell her if not for me at least do it for you.  I need you to talk to her sister (Nessie) and tell her to talk to Candy too.  Mama this Bitch is really selfish.  Just let her think that I love and forgive her.  If I get found guilty on this case I'm getting 100 years for sure. … Mama right now we have to do what it takes to get me outta this shit.  Tell Candy she needs to make sure her friend don't come to court because she is the one who can really hurt me 4 real.

[12]     State's Exhibit 66 provided in part:

> [My lawyer] will call you when she is ready to set up a meeting.  Let Sis know.  Tell her that she picked me up on "Wallace in her Impala" at <u>11:15</u> or <u>11:20</u> p.m.  We went to her house smoked a

---

[4] George concedes he authored the letters at issue.

blunt and she dropped me off at Candy's house in the Cottages at around <u>12:30</u> – <u>12:45</u>  And Little Derek opened the door to let me in.  Let her know she must remember these times.  It's very important.  Derek already told them what time he let me in the house.  We all have to be on the same page.  Time is very, very, very Important!

[13]  Evidentiary admissibility is considered under the Indiana Rules of Evidence, and we review the trial court's evidentiary ruling only for an abuse of discretion.  *Snow v. State*, 77 N.E.3d 173, 176 (Ind. 2017).  An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances before the court.  *Id.*  George contends that the letters should have been excluded because any probative value under Indiana Evidence Rule 401 was far outweighed by the danger of unfair prejudice, as contemplated by Evidence Rule 403.  "A trial court's discretion is wide on issues of relevance and unfair prejudice."  *Snow*, 77 N.E.3d at 176.

[14]  Evidence Rule 401 provides:

> Evidence is relevant if:
>
> (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) The fact is of consequence in determining the action.

The Rule prescribes a "liberal standard for relevancy" and "sets a low bar.  *Snow*, 77 N.E.3d at 177.  The trial court has "wide discretion" in deciding "whether that bar is cleared."  *Id.*

[15]   Relevant evidence is subject to the balancing test of Evidence Rule 403:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

"As with relevance under Rule 401, this balancing is committed to the trial court's discretion," and a reviewing court is not inclined to "second-guess the trial court's determination" within its wide discretion. *Snow*, 77 N.E.3d at 179.

[16]   George initially argues, "neither of the letters have any tendency to make any fact regarding the shooting incident any more or less probable or 'of consequence in determining the action.'" Appellant's Brief at 12. The State responds that George attempted to obstruct a witness (Craig) and to "manipulate" potential testimony (from George's sister). Appellee's Brief at 12. According to the State, both letters have relevance because they show George's consciousness of guilt.

[17]   As for State's Exhibit 65, the letter urging George's mother to "make sure" a witness "don't come to court," coupled with the acknowledgement that her testimony would be crucial, we have little difficulty concluding that it is relevant as it has a tendency to show George's guilt. *See Zanussi v. State*, 2 N.E.3d 731, 736 (Ind. Ct. App. 2013) (concluding that letters from a defendant admitting he had hurt the victim and discouraging her from testifying against him "were highly probative.").

[18] George concedes that his letters "cast him in a bad light" but argues that the State "exploited" this. Appellant's Brief at 10, 12. Indeed, the language of State's Exhibit 65 was prejudicial. But Rule 403 is concerned with "unfair" prejudice. In clear terms, George urged his mother to take steps to discourage an eyewitness from appearing at a deposition or in court. We discern no abuse of the trial court's wide discretion when it permitted the jury to view the letter.

[19] However, the second letter contains neither an admission of guilt nor a direct attempt to influence a witness. Therein, George advises his mother that there will be a meeting with defense counsel, and he outlines what he expects his sister to say. He appears to suggest that his sister is an appropriate alibi witness. Ultimately, however, the defense presented no witnesses. The circumstances are unlike those of *Saperito v. State*, 490 N.E.2d 274 (Ind. 1986), to which the State directs our attention. There, the defendant wrote to his friend insisting that he testify and outlining in great detail what the testimony should be, suggesting that he was "desperate enough to manufacture testimony." *Id.* at 277. Here, we cannot say that a defendant's attempt to present his version of events to counsel, without more, evidences consciousness of guilt. As such, State's Exhibit 66 was not relevant.

[20] An error in admitting evidence does not require reversal unless the error affects the substantial rights of a party. *Stewart v. State*, 754 N.E.2d 492, 496 (Ind. 2001). The improper admission of evidence will be considered harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that

the questioned evidence contributed to the conviction. *Pelissier v. State*, 122 N.E.3d 983, 988 (Ind. Ct. App. 2019). Also, the erroneous admission of evidence may be harmless if the evidence is cumulative of other evidence properly admitted. *Leonard v. State*, 86 N.E.3d 406, 413 (Ind. Ct. App. 2017).

[21] Craig testified that she saw Leflore hand George a black and silver gun and that she later saw George use the same gun to shoot Burt. Also, ballistics testing linked cartridge casings found at the murder scene to a weapon Leflore had owned. In 2017, the weapon had been confiscated in a domestic violence case, tested by police personnel, and returned to Leflore. Thereafter, Leflore had reported the weapon as stolen, providing an exact serial number. With an eyewitness and corroborative physical evidence, there is no substantial likelihood that State's Exhibit 66 contributed to George's conviction.

# Conclusion

[22] George has demonstrated no reversible error in the admission of evidence.

[23] Affirmed.

Kirsch, J., and Mathias, J., concur.