


FILED

Jun 26 2023, 10:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-PO-89

## S.D.,
*Appellant*

–v–

## G.D.,
*Appellee*

Argued: May 17, 2023 | Decided: June 26, 2023

Appeal from the Starke Circuit Court
No. 75C01-2201-PO-1
The Honorable Micah P. Cox, Magistrate

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-PO-521

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

Three years ago, we recognized that domestic and family violence is "a public-health crisis that harms both the victim and those within the victim's household." *S.H. v. D.W.*, 139 N.E.3d 214, 216 (Ind. 2020). Since that decision, the crisis in Indiana has—unfortunately—only intensified.

Last year, Hoosiers filed over 37,000 cases seeking a protective order, representing nearly 10% of all civil cases. To put these staggering numbers in perspective, filings seeking a protective order accounted for more than all filings related to expungements, guardianships, adoptions, and torts combined. And these numbers are growing. Our courts experienced more than a 3% increase in protective order filings from 2021 to 2022, and the statistics thus far for 2023 reflect a similar rise.

When reviewing a petition for a protective order, our trial courts are directed by Indiana's Civil Protection Order Act. Here, consistent with the Act's requirements, a court issued a protective order after finding the petitioner established that the respondent committed an act of domestic or family violence against their child and that he represented a credible threat to their safety. Because we conclude that the trial court's evidence-based findings support its judgment, we affirm.

## Facts and Procedural History

G.D. ("Mother") and S.D. ("Father") are the divorced parents of a daughter, H.D. ("Child"). Mother and Child live in northern Indiana, while Father lives in Michigan. The parties' divorce proceedings occurred in Michigan, and Father was granted parenting time with Child to be supervised by Father's mother.

On December 26, 2021, Father exercised supervised parenting time at mother's house with Mother and Child, who was two years old at the time. During that parenting time, a physical altercation ensued. It began when Father informed Mother that he was going to take Child and leave "because he wasn't going to be 'trapped in the house.'" When Mother told him no, he screamed at her in front of Child, telling Mother to "get the f[***] out of the house." After Mother repeatedly told Father she would

not fight with him in front of Child, he "snatched [Child] up by her arm" and dug "his nails into her arm." With Child "screaming mommy," Mother intervened, at which point Father grabbed Child "by the ribcage" and tried "to take off with her." Mother then grabbed Father's throat to make him release Child. Then, as Child was "screaming and crying," Father smacked Child "in the mouth." Due to Mother choking Father, he eventually let go of Child, and Mother ran out of the house with Child and called the police.

Eleven days later, Mother filed a petition for an ex parte protective order. The trial court granted the petition the following day. Father then wrote the court a letter in which he objected to the order, denied Mother's allegations, and requested a hearing; the court subsequently scheduled a remote hearing.

At that hearing, Mother and Father each represented themselves pro se. The trial court first asked Mother under oath to verify the factual scenario in her petition. She confirmed it was true and then testified, relaying a similar account of the altercation. She also indicated the incident wasn't Father's "first angry outburst," explaining that he "cusses [her] out almost every single time in front of" Child. Providing a different version of the incident, Father testified that he "never grabbed [Child] by the arm" and that when he picked Child up, Mother took Child from him "to not let us leave" and then pushed him once and choked him twice.

After listening to the parties, the trial court indicated it was "very clear" that Mother and Father had each been "engaging in acts of domestic violence" and both "would probably . . . qualify as credible threats." The court, however, found Mother had "more credibility" than Father. In reaching that conclusion, the court noted Father's explanation that Mother "strangled him for no reason" didn't "make any sense," and Mother "owned up to what was going on and admitted to strangling" Father. Thus, the trial court issued a two-year protective order, concluding Mother had established that "domestic or family violence" occurred and that Father "represents a credible threat to the safety" of Mother or Child.

Father appealed, and a split panel of our Court of Appeals reversed. *S.D. v. G.D.*, 195 N.E.3d 406, 407 (Ind. Ct. App. 2022), *reh'g denied*. The

majority held the evidence was insufficient to find Father was "a present, credible threat," and the trial court erred by "not balancing any need for protection against the burden imposed by the protective order." *Id*. Judge Altice dissented, believing the majority improperly reweighed the evidence. *Id.* at 411–12 (Altice, J., dissenting).

Mother petitioned for transfer, which we granted, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

When, as here, a party appeals a trial court's judgment entering a protective order, we apply a two-tiered standard of review—we consider whether the evidence supports the court's findings and, if so, whether those findings support the judgment. *S.H.*, 139 N.E.3d at 220–21; Ind. Trial Rule 52(A); *see also Costello v. Zollman*, 51 N.E.3d 361, 366 (Ind. Ct. App. 2016), *trans. denied*. In making these determinations, we neither reweigh the evidence nor determine the credibility of witnesses, and we consider only the evidence favorable to the trial court's decision. *T.M. v. T.M.*, 188 N.E.3d 42, 44 (Ind. Ct. App. 2022), *trans. denied*.

## Discussion and Decision

The Indiana Civil Protection Order Act provides Hoosiers and our trial courts with a vital tool to remedy and guard against domestic or family violence in their communities. Though the Act was passed over two decades ago, its roots trace back further. In 1991, the National Council of Juvenile and Family Court Judges identified the need for a streamlined approach to address allegations of domestic or family violence. Nat'l Council of Juv. & Fam. Ct. Judges, *Family Violence: A Model State Code*, v (1994). As a result, it established a multidisciplinary committee composed of national leaders that began drafting the Model Code on Domestic and Family Violence. *Id.* The Council undertook this monumental task in recognition of "the critical importance of legislation" to meaningfully reduce and prevent domestic and family violence. *Id.* Three years later, the Council published the Code, which includes a comprehensive statutory

scheme, with the goal of facilitating nationwide uniformity to enhance the "quality of justice for victims and perpetrators of domestic and family violence." *Id.* § 101 cmt.

Our General Assembly helped realize this goal in 2002 by adopting most of the Code's applicable provisions into Indiana's Civil Protection Order Act. Pub. L. No. 133, § 56, 2002 Ind. Acts 1980, 2010–21 (codified at Ind. Code ch. 34-26-5). And, in doing so, the Legislature explained the Act's purpose is to protect and keep safe "all victims of domestic or family violence in a fair, prompt, and effective manner" and prevent such violence in the future. Ind. Code § 34-26-5-1. At the same time, the "Act is not one-sided," as its explicit requirements balance "the need to protect victims of domestic violence against the interests of those against whom a protective order is sought." *S.H.*, 139 N.E.3d at 217.

It is not our trial courts but the Act itself that strikes this balance by requiring the petitioner to make specific showings before a court can issue a protective order. Relevant here, an individual may petition for a protective order against a "family or household member who commits an act of domestic or family violence." I.C. § 34-26-5-2(a)(1). To justify an order, the petitioner must show by a preponderance of the evidence that the respondent committed an act of domestic or family violence such that the "respondent represents a credible threat to the safety of" the petitioner or a member of their household. *Id.* § -9(h).[1] Importantly, in determining whether the petitioner has met this burden, the court cannot deny relief "solely because of a lapse of time between an act of domestic or family violence . . . and the filing of a petition." *Id.* § -13. And if the court finds the petitioner has met their burden, it must issue a protective order and "grant relief necessary to" end the violence or threat of violence. *Id* § -9(h).

In close cases—such as the one before us today—when the evidence could lead a court to grant or deny a petition, we echo Judge Altice's observation that "the trial court is the one to make that call." *S.D.*, 195

---

[1] This requirement was found in subsection (g) at the time the trial court issued the protective order. Other changes in the current version of the Act are not relevant to this appeal.

N.E.3d at 411 (Altice, J., dissenting). Indeed, our trial courts are far better than appellate courts "at weighing evidence and assessing witness credibility." *Snow v. State*, 77 N.E.3d 173, 177 (Ind. 2017). And this is particularly true in protective order cases, where our trial judges see and hear the parties interact as they relay details about intensely personal, traumatic events. Our review of this evidence on appeal is far less clear from our vantage point in the "far corner of the upper deck." *Id.* (quoting *State v. Keck*, 4 N.E.3d 1180, 1185 (Ind. 2014)).

Here, after considering such evidence from Mother and Father, the trial court issued a protective order against Father, finding Mother met her burden of showing that "domestic or family violence has occurred" and that he "represents a credible threat to the safety" of Mother or Child. We initially dispose of Father's contention that the court erred "by not conducting a balancing test when determining whether relief should be granted." As explained above, the Act's requirements incorporate the balancing. Thus, our trial courts need only determine whether the petitioner has made the requisite showings by a preponderance of the evidence. And while the trial court here did just that, Father argues the evidence was "wholly insufficient" to support the court's findings. We disagree. The evidence favorable to the court's decision supports its findings, which in turn support its judgment. We therefore affirm.

## I. Evidence supports the trial court's finding that Father committed an act of domestic or family violence.

Our Legislature has defined "domestic or family violence" to include "causing physical harm to another family or household member" or "[p]lacing a family or household member in fear of physical harm." I.C. § 34-6-2-34.5. Father asserts that "Mother failed to present any evidence of probative value to support the trial court's finding that 'domestic or family violence has occurred.'" But Father simply disagrees with the trial court's credibility determination, and evidence favorable to the court's decision supports its finding.

In her petition for a protective order, Mother explained that Father "snatched" Child up by "digging his nails into her arm." After Mother intervened, Father grabbed Child "by the ribcage" and, smacked "her in the mouth" while she was "screaming and crying." Mother attested in the petition that these accusations were true "under the penalties for perjury." And at the subsequent hearing, Mother's petition was in front of the trial court when she confirmed the veracity of her allegations under oath. She also relayed similar details about the incident, testifying that Father "dug his nail into" Child's arm when he "picked her up" and that he "grabbed her by the ribs."

From this evidence, the trial court could reasonably conclude that Father caused physical harm to Child and that his verbal outburst placed Mother or Child in fear of physical harm, supporting the court's finding that Father's actions constituted domestic or family violence. To be sure, Father presented the court with a different version of events, but the court ultimately found Mother "has more credibility." And it is not our role to question that credibility determination. Father's other argument fails for similar reasons.

## II. Evidence supports the trial court's finding that Father posed a credible threat to Mother or Child's safety.

Under the Act, a finding that domestic or family violence occurred sufficient to justify a protective order "means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household." I.C. § 34-26-5-9(h). Father argues "Mother failed to present any evidence, let alone probative evidence, to support the trial court's finding" that he represents a credible threat. But Father's argument is based on a misunderstanding of our precedent, and evidence favorable to the court's decision supports its finding.

Father relies heavily on *S.H.*, 139 N.E.3d at 214, in asserting there was no evidence he posed "a current, credible threat to" Mother or Child—but his reliance is misplaced. In *S.H.*, unlike here, we reviewed a trial court's

decision to issue a second protective order. *Id.* at 217–18. And, in reversing that decision, we concluded there were no "reasonable grounds" to find the respondent posed an objectively credible threat to the petitioner's safety at the time she sought the second protective order. *Id.* at 220–21. We reached this conclusion because the record revealed the respondent never violated the original order, he lived more than two-hundred miles away from the petitioner where he was involved in a new relationship, the parties shared no children together, and the petitioner did not produce any evidence supporting her belief that the respondent orchestrated threatening messages through third parties. *Id.* at 221. Thus, *S.H.* establishes that a petitioner seeking a successive protective order may not be able to show the respondent poses an objectively credible threat when relief is sought based solely on circumstances justifying a previous order.

But *S.H.* does not establish that lapses in time or intervening events necessarily render a threat less credible. Indeed, we recognized that a one-time perpetual threat—regardless of when it was made—could justify a trial court's credible-threat finding. *Id.* at 220. And the Act explicitly prohibits a court from denying relief "solely because of a lapse of time between an act of domestic or family violence . . . and the filing of a petition." I.C. § 34-26-5-13. Ultimately, our trial courts must consider the evidence and determine whether the respondent's actions—viewed objectively at the time the petitioner seeks relief—provide reasonable grounds to believe the threat of violence persists. While lapses in time or intervening events may be probative of whether a threat persists, so too are a variety of other relevant circumstances, including the parties' history and relationship, the respondent's past behavior, the nature of the respondent's actions, or the respondent's demeanor in court.

Here, Father's actions viewed objectively at the time Mother sought relief provided the trial court with reasonable grounds to conclude he posed an objective, credible threat to Mother or Child's safety. The violent altercation occurred only eleven days before Mother filed for a protective order and only a few weeks before the two-year order was issued. Though longer periods of time, standing alone, do not negate a persisting threat of violence, the short durations of time in this case bolster the court's finding. And while Father saw Child once after the altercation without incident,

that occurrence does not mean the threat of violence dissipated. Indeed, Mother testified the altercation wasn't Father's "first angry outburst" and indicated "he cusses [her] out almost every single time" in front of Child. Additionally, Mother and Father did not live far from each other at the time of the altercation, and their involvement in each other's lives is likely to continue due to Child's young age.

From this evidence, the court could reasonably conclude Father posed an objectively credible threat to Mother or Child's safety when Mother sought relief. To conclude otherwise would again require us to reweigh the evidence and reassess witness credibility, which we will not do.

## Conclusion

The trial court's evidence-based findings support its judgment issuing a protective order against Father. We therefore affirm.[2]

Massa, Slaughter, Goff, and Molter, JJ., concur.

---

[2] We thank all amici for their helpful briefs.

ATTORNEYS FOR APPELLANT
Alexander N. Moseley
Matthew C. McConnell
Dixon & Moseley, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Jon B. Laramore
William A. McCarthy
Malorie K. Palmer
Indiana Legal Services, Inc.
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE INDIANA COALITION AGAINST
DOMESTIC VIOLENCE, INC., ET AL.
Matthew T. Albaugh
Brittni C. Wassmer
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

Kerry H. Bennett
Indiana Coalition Against Domestic Violence, Inc.
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE PROTECTIVE ORDER PROJECT
Seth M. Lahn
Indiana University Maurer School of Law
Bloomington, Indiana